UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| John DOE #2[1] ) | 3:21-CV-00514 (KAD) |
|    *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| LEGION OF CHRIST, INC., ) | FEBRUARY 25, 2022 |
| IMMACULATE CONCEPTION ) | |
| APOSTOLIC SCHOOL, & DAVID ) | |
| CONSOLI ) | |
|    *Defendants*. ) | |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, ECF No. 22**

Kari A. Dooley, United States District Judge:

In this personal injury suit, Plaintiff John Doe #2 seeks damages for injuries stemming from his time as a student at the Immaculate Conception Apostolic School ("ICAS"). Plaintiff generally alleges that, while a minor under Defendant ICAS's care, he suffered sexual abuse at the hands of Defendant David Consoli and that Defendants ICAS and Legion of Christ, Inc. ("LOC, Inc."), as the owner and operator of ICAS, bear responsibility for that abuse. Plaintiff suffered then and continues to suffer now from psychological and emotional injuries. Against LOC, Inc., Plaintiff brings six claims in his compliant: Negligence, Recklessness, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, Breach of Fiduciary Duty, and Breach of the Special Duty of Care.

---

[1] The Court granted Plaintiff's motion to proceed by a fictitious name. (ECF No. 9.)

Pending before the Court is LOC, Inc.'s motion to dismiss Counts II and V of the Complaint, asserting recklessness and breach of fiduciary duty, respectively.[2] For the reasons set forth below, the motion is GRANTED.

**Procedural History**

Plaintiff filed his Complaint on April 15, 2021. (ECF No. 1.) This is one of six cases pending before the Court raising similar allegations brought by different Plaintiffs. In addition to this action, also pending before the Court are the following: *John Doe #1 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00512, *John Doe #3 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00515, *John Doe #4 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00516, *John Doe #5 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00517, and *Jane Doe v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00518.

ICAS and LOC, Inc. each filed a motion to dismiss. ICAS asserts that the Court does not have personal jurisdiction over it or, alternatively, that the case should be dismissed for the reasons advanced by LOC, Inc. in its motion to dismiss. (ECF No. 21.) LOC, Inc. seeks dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), with respect to the recklessness and breach of fiduciary duty claims under New Hampshire law. (ECF No. 22.)

**Allegations**

Plaintiff is an adult who was formerly a student at ICAS, which is located in Center Harbor, New Hampshire (Compl. ¶ 1.) ICAS was a private Roman Catholic boarding school for boys in grades seven through twelve, and its objective was to educate high school candidates for service

---

[2] ICAS had requested to join this motion if its own motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) was not granted. That motion has been granted by a separate memorandum of decision, issued this same day, and the Court therefore only addresses the 12(b)(6) arguments as to LOC, Inc.

in the clergy of The Legion of Christ, a religious order affiliated with the Catholic Church.[3] (Compl. ¶¶ 10, 12.) LOC, Inc. owned and operated ICAS. (Compl. ¶ 4.)

In 1997, when he was around thirteen years old, Plaintiff commenced schooling at ICAS, where he remained until he was around fifteen years old. (Compl. ¶ 13.) Defendant Consoli sexually abused Plaintiff on at least twelve occasions, by fondling the Plaintiff's penis, while Plaintiff attended ICAS. (Compl. ¶ 14.) Defendant Consoli was a staff member at ICAS, and he was a superior and supervisor of the Plaintiff while the Plaintiff was at ICAS. (Compl. ¶ 15.) Plaintiff was "special" to Defendant Consoli, who would give Plaintiff extra attention and interaction (Compl. ¶ 16.) Defendant Consoli made it clear through his actions that Plaintiff was expected to be silent about the abuse, that he was not to challenge his superior, and that to do so was a sin. (Compl. ¶ 17.) The Plaintiff did not consent to Defendant Consoli's alleged sexual abuse and reported the conduct to another individual. (Compl. ¶ 18.) The Plaintiff also alleges that, "[u]pon information and belief, prior to the sexual abuse of the Plaintiff, Defendants were aware that [Defendant] Consoli engaged in sexual activity with other minor children at I.C.A.S." (Compl. ¶ 20.)

The administration and/or supervision of ICAS by The Legion of Christ was under the direction and control of Defendant LOC, Inc.'s headquarters. (Compl. ¶ 5.) LOC, Inc. was in a special relationship with the Plaintiff of school-student, essentially *in loco parentis* with the Plaintiff. (Compl. ¶ 21.) LOC, Inc. employed Defendant David Consoli, and LOC, Inc. knew that Defendant Consoli was unfit to work with minors, dangerous, and a threat to the health, safety,

---

[3] As "Background," Plaintiff alleges that The Legion of Christ is a religious order associated with the Roman Catholic Church and that The Legion of Christ has experienced a number of sexual abuse scandals over the years, including some at ICAS. However, Plaintiff does not specifically explain the relationship between The Legion of Christ, the religious order, and LOC, Inc. The Complaint simply adopts "Legion of Christ" as a naming convention for collectively referring to Defendants LOC, Inc. and ICAS.

3

and welfare of the Plaintiff. (Compl. ¶ 23–24.)  And despite LOC, Inc.'s knowledge of Defendant Consoli's serious threat to the health, safety, and welfare of minors, LOC, Inc. provided Defendant Consoli with unfettered access to minors, including Plaintiff. (Compl. ¶ 26.) LOC, Inc. also knew of the prevalence of sexual abuse in their clergy. (Compl. ¶ 25.) Notwithstanding LOC, Inc.'s conscious awareness of the risk of harm to Plaintiff, LOC Inc. took affirmative steps to exacerbate the risk and make harm more likely by permitting Defendant Consoli to have access to Plaintiff despite knowing of Defendant Consoli's dangerous propensities and failing to take immediate and proper steps to limit contact between Defendant Consoli and Plaintiff. (Compl. ¶ 41.)

As a direct and proximate result of LOC, Inc.'s actions, the Plaintiff suffered and continued to suffer injuries of a serious nature, including mental and emotional distress, anxiety, psychological and psychiatric scarring, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation, and costs associated with medical/psychological treatment. (Compl. ¶ 38.) These injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future. (*Id.*).

**Legal Standard**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause

4

of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

In seeking dismissal of Counts II and V, LOC, Inc. argues that New Hampshire law does not recognize an independent cause of action for recklessness under circumstances not giving rise to an intentional tort, and further that Plaintiff cannot bring a claim for breach of fiduciary duty because New Hampshire law only recognizes fiduciary relationships, within the educational context, in post-secondary schools. In response, Plaintiff argues that Connecticut law, not New Hampshire law, applies to this case. Alternatively, Plaintiff asserts that he plausibly alleged a cause of action for both recklessness and breach of fiduciary duty under New Hampshire law.

The Court begins, as it must, with the conflict of laws analysis.

***Connecticut vs. New Hampshire Law***

Generally, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court. *Liberty Synergistics, Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 494–97 (1941); *Sun Oil Co. v. Wortman*, 486 U.S. 717, 729–30 (1988)) (further citations omitted). In Connecticut, courts apply the "most significant" relationship test set forth in §§ 6(2) and 145 of the Restatement (Second) of Conflict of Laws to determine which rules of decision would apply in tort actions. *Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 551 n.9 (2016). "Contacts to be taken into account in applying the principles of § 6 to determine the law applicable

5

to an issue include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation, and business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2). *See also Stanley Works Israel Ltd. v. 500 Group, Inc.*, 332 F. Supp. 3d 488, 498 (D. Conn. 2018) (citing *Otis Elevator Co. v. Factory Mut. Ins. Co.*, 353 F.Supp.2d 274, 285 (D. Conn. 2005)) (discussing these four factors). "[I]t is the significance, not the number of the § 145(2) contacts that determines the outcome of the choice of law inquiry under the Restatement approach." *Western Dermatology Consultants, P.C.*, 322 Conn. at 560. In performing this four-factor analysis the Court is further guided by the principles and policies which are implicated in a choice of law analysis:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and, (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2). *See also Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 351 (D. Conn. 2013) ("The Court must consider [§ 145(2)] contacts in the context of the relevant policies and interests of the jurisdictions involved.").

Here, the parties agree that the four-prong test set out in § 145(2) of the Restatement determines the outcome of this inquiry but disagree as to what that outcome is. LOC, Inc. argues that all four § 145(2) factors favor applying New Hampshire law because, broadly speaking, the alleged sexual abuse and Plaintiff's injury occurred in New Hampshire. Plaintiff, on the other hand, asserts that the causes of action arise from LOC, Inc.'s conduct and decisions regarding the operation of ICAS, which were all made in Connecticut. The Plaintiff thus argues that the Court

6

must also consider the seven principles found in § 6 and that such consideration favors applying Connecticut law. In reply, LOC, Inc. asserts that the seven factors found in § 6 are either neutral or support applying New Hampshire law.

The Court agrees with LOC, Inc. Plaintiff's claims derive from the sexual abuse he suffered at ICAS in New Hampshire. Thus New Hampshire is the place where the injury occurred, as well as the place where the conduct causing the injury occurred. Restatement (Second) of Conflict of Laws §§ 145(2)(a) & (b). While there are allegations that conduct outside of New Hampshire contributed to or enabled the sexual abuse, without the abuse there is no injury nor claims arising from the same. *See Almonte v. New York Medical College*, 851 F. Supp. 34, 39 (D. Conn. 1994) (holding that Connecticut law applied where the alleged sexual abuse occurred in Connecticut but the alleged negligence occurred in New York). *See also Knights of Columbus*, 930 F. Supp. 2d at 352 (applying Texas law to a Connecticut organization accused, *inter alia*, of negligence in letting at least one member of that organization have access to and sexually abuse a minor in Texas). Section 145(2)(c) is neutral. Although LOC, Inc. is alleged to be a Connecticut corporation with its principal place of business in Connecticut, at the time that the sexual abuse occurred, Plaintiff resided in New Hampshire. But Plaintiff's residence in New Hampshire during the events in question supports a finding that the relationship between the parties, at the time, was centered in New Hampshire. *See* Restatement (Second) of Conflict of Laws § 145(2)(d). Thus although Plaintiff repeatedly emphasizes that LOC, Inc. had "a duty to protect Plaintiff *from Connecticut*," *e.g.*, Pl.'s Opp. Mem. 6, ECF No. 32, in this context any duty LOC, Inc. had was to a duty owed to the Plaintiff where the Plaintiff himself was located—in New Hampshire.

The Court has considered Plaintiff's policy arguments advanced under § 6 of the Restatement and finds them unpersuasive when viewed in the context of a case where three of the four factors set forth in §145(2) overwhelmingly favor the application of New Hampshire law.

***Recklessness & Breach of Fiduciary Duty under New Hampshire Law***

The Court next turns to whether New Hampshire law recognizes recklessness which does not rise to the level of intentional conduct as an independent cause of action and whether, under New Hampshire law, a breach of fiduciary duty claim is cognizable under the circumstances alleged here. LOC, Inc. asks the Court to answer both inquires in the negative. Plaintiff asserts that both claims are cognizable and adequately alleged.

As to the recklessness count, "New Hampshire law does not distinguish causes of action based on ordinary and gross negligence. '[T]he doctrine of definitive degrees of negligence is not recognized as a part of our common law . . . .'" *Barnes v. N.H. Karting Ass'n*, 128 N.H. 102, 108–09 (1986) (quoting *Lee v. Chamberlin*, 84 N.H. 182, 188 (1929)); *see also Thompson v. Forest*, 136 N.H. 215, 219–20 (1992) (drawing a distinction between intentional and non-intentional torts and holding that, without an allegation supporting a claim that the conduct at issue was intentional, a recklessness claim "at best support[ed] a negligence theory"); *Lizzol v. Bros. Property Mgmt. Corp.*, No. 15-cv-100-SM, 2017 WL 3917014, at * 3 (D.N.H. Sept. 6, 2017) (holding that if the plaintiffs were "using the term 'recklessness' to describe conduct that is something akin to 'grossly negligent,' but short of intentionally wrongful," then the plaintiffs had no claim under New Hampshire law because New Hampshire law did not recognize gross negligence as a separate cause of action).

Notwithstanding, Plaintiff asserts that the holding in *Thompson* (upon which LOC, Inc. primarily relies) is limited to the worker's compensation context. Plaintiff also relies upon *Migdal*

8

*v. Stamp*, 132 N.H. 171 (1989), for the proposition that New Hampshire does recognize recklessness claims independent of negligence claims. The Court disagrees. New Hampshire courts have not so definitively limited *Thompson*,[4] and in any event, New Hampshire's refusal to recognize recklessness as anything other than a variety of negligence appears to predate that case. *See Barnes*, *supra*. As for *Migdal*, it merely affirmed that reckless, willful, or wonton conduct could create liability that would otherwise be precluded by the bar set by the firefighter's rule against "ordinary negligence" claims. 132 N.H. at 176.[5] *Migdal* did not, as urged by the Plaintiff, recognize a separate cause of action for recklessness.

As to the breach of fiduciary duty claim, in *Schneider v. Plymouth State College*, the New Hampshire Supreme court held that a student could maintain a breach of fiduciary duty claim against her college because in such a setting there is a "unique" relationship between the student and the school giving rise to a fiduciary duty. 144 N.H. 458, 462–63 (1999). In so holding, the Court distinguished the relationship between students in a secondary school from the college student plaintiff in *Schneider*. *Id.* Plaintiff disagrees that *Schneider* applies here or that it precludes his cause of action. Specifically, Plaintiff argues that while *Schneider* permitted a breach of fiduciary duty claim in the context of a post-secondary educational context, it did not preclude such a claim in the secondary school setting. While this is accurate, the *Schneider* Court also stated:

> [O]ur conclusion that a fiduciary relationship existed between the defendants and the plaintiff does not rest on the *in loco parentis* doctrine. In *Marquay v. Eno*, 139 N.H. 708, 717–18, 662 A.2d 272, 279 (1995), we held that a special relationship exists between primary and secondary schools and their students, and that that

---

[4] *E.g.*, *Kurowski v. Town of Chester*, 170 N.H. 307, 314 (2017) (assuming without deciding that *Thompson*'s discussion of intentional and non-intentional torts applied in the context of recreational use immunity statutes); *Boulter v. Eli and Bessie Cohen Foundation*, 166 N.H. 414, 422 (2014) (holding that the firefighter's rule applied to a police incident while quoting *Thompson*'s discussion of intentional and non-intentional torts).

[5] A "firefighter's rule" generally protects those who request the assistance of first responders from a first responder's negligence claims in the event a first responder is injured in the course of their duties. *Migdal* held the defense inapplicable where the plaintiff alleged that the defendant's conduct was wanton, willful and reckless. 132 N.H. at 176.

> relationship imposes a duty of care upon schools to protect students who they know or should know are being sexually abused by school employees. We based our conclusion in part on the role of schools as parental proxies over minor students. *See id*. at 717, 662 A.2d at 279. In contrast, the fiduciary relationship in this case rests on the unique relationship described above.

*Id*. at 163. By drawing the distinction between the fiduciary duty found in *Schneider*, and the special relationship that exists in the secondary school setting, the New Hampshire Supreme Court re-affirmed the *Marquay* decision in a manner that strongly suggests it would not find a fiduciary relationship between minor students and educators at the secondary school level. In that vein, the Court agrees with other courts that have concluded that given the opportunity, the New Hampshire Supreme Court would not allow a breach of fiduciary duty claim against a secondary school. *See Franchi v. New Hampton School*, 656 F. Supp. 2d 252, 261–264 (D.N.H. 2009) (holding that, under New Hampshire law, a breach of fiduciary duty claim could not be brought against a secondary school because the nature of the duty owed to a student by a secondary school grows out of the school's *in loco parentis* status). *See also John Doe v. The Legion of Christ Inc.*, Dkt. No. 3:17-cv-1394 (AWT), ECF No. 54, at 6 (D. Conn. Aug. 23, 2018).

Plaintiff's alternative argument—that even if *Schneider* limited the reach of fiduciary claims to post-secondary schools, ICAS was more akin to a post-secondary school than a traditional secondary school and so subject to fiduciary liability—is unavailing. Plaintiff points to no authority to support this position, nor does Plaintiff in any way distinguish *Franchi*, which itself held that a private boarding school could not be subject to liability for a breach of fiduciary duty claim.

In sum, New Hampshire law does not recognize the recklessness and breach of fiduciary duty claims contained in Plaintiff's complaint.

**Conclusion**

For the forgoing reasons, the motion to dismiss Counts II and V is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of February 2022.

                                       _/s/ Kari A. Dooley_
                                       KARI A. DOOLEY
                                       UNITED STATES DISTRICT JUDGE